# Exhibit B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BROOK JACKSON,<br><br>Plaintiff,<br><br>- v -<br><br>VENTAVIA RESEARCH GROUP, LLC; PFIZER INC.; ICON PLC,<br><br>Defendants. | CASE NO. 1:21-CV-00008-MJT |

**[PROPOSED] E-DISCOVERY ORDER**

The Court ORDERS as follows:

**A.   SCOPE**

**1.   General**. Nothing in this Protocol alters a party's rights, obligations, and responsibilities under the applicable Federal Rules of Civil Procedure and applicable decisional authority, nor does anything in this Protocol impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure and applicable decisional authority.  The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decisional authority for matters relating to the production of data that are not specifically addressed in this Protocol. Nothing in this Protocol is intended to or shall serve to limit a party's right to conduct a review of documents for relevance, responsiveness, and/or segregation of privileged or protected information before production.

**2.   Litigation Holds and Preservation**.  If, during its document collection efforts, a party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable,

the producing party shall explain, to the extent that the information is reasonably available, where and when the ESI was last retrievable in its original format and the circumstances which lead to the information no longer being retrievable.  Parties shall not be obligated under this Agreement to produce deleted ESI lost as a result of the routine, good-faith operation of an ESI system prior to the date the litigation hold in this case was actually put into effect, or the date that the litigation hold was required to be put into effect, whichever first occurred.

      3.      **Proportionality**.  The parties agree to negotiate in good faith regarding requests and production of documents to ensure discovery is reasonable and proportional to the matter.

      4.      **Culling and Search Terms**.  The parties will meet and confer to discuss search term culling, file-type culling, de-duplication of documents, and date restrictions.  In the event of a dispute, the parties must meet and confer to discuss any issues or concerns surrounding applicable search terms or culling.  The fact that a document may have been retrieved by application of the agreed upon search terms shall not prevent any party from withholding from production such document for privilege or non-responsiveness.

      In the event that any party determines in good faith, after attempting to use the agreed search terms, that its use of any of those search terms is unreasonably burdensome and inefficient and/or would result in the review of a large volume of unresponsive documents, then it shall meet and confer with the party that propounded the document request to which it is responding. The requesting party shall negotiate in good faith to modify the agreed search term(s).  In the absence of a mutually acceptable agreement to modify the agreed search term(s), the producing party may apply to the Court to modify the terms of this protocol.

      5.      **Custodians and Data Repositories**.  The Parties may identify hard copy documents or ESI: (a) by identifying and selecting custodians most likely to possess relevant

documents; and/or (b) by applying the agreed upon search terms to identifiable data repositories and custodian data sources. Each producing party may, at its election, review hard copy documents or ESI that contains any agreed upon search terms for privilege and responsiveness prior to production to the receiving party. The parties shall meet and confer in an attempt to mutually identify custodians, custodial data sources, and other data repositories which contain discoverable documents in its possession. In the absence of a mutually acceptable agreement regarding the custodians, custodial data sources, and other data repositories, the parties shall seek guidance from the Court.

B.  **PRODUCTION**

6.  **Bates Numbering**. All images must be assigned a Bates number that: (1) must be unique across the entire document production; (2) must maintain a constant length (zero/0-padded) across the entire production; (3) must contain no special characters or embedded spaces; (4) must be sequential within a given document; (5) must not obscure any part of the underlying image; (6) must, to the extent possible, be oriented in the same manner as the majority of the text on the page.

7.  **Confidentiality Endorsements**. The producing party must brand any confidentiality or similar endorsements in a corner of the TIFF images pursuant to the protective order entered in this case. Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

8.  **Redactions**. Any producing party may use redactions to protect attorney-client or attorney work product privileges, other legal privileges or protected patient health information or other personal information.

When a document is partially privileged, the document will be produced in TIFF image with the privileged portions redacted. No native ESI items will be produced for redacted items,

except when producing redacted TIFF images is not technically reasonable. The TIFF image for a document produced in redacted form will be a label identifying the redacted area of the document and reason for redaction. For redacted items which were originally ESI, unaffected, non-privileged metadata fields will be provided.

9. **Parents and Children**. The parent-child relationships (the association between an attachment and its parent document) must be preserved. Family relationships often exist between an e-mail and its attachments, but can also be found amongst a stand-alone document and files originally contained within that parent document, which are subsequently de-embedded as part of discovery processing. An example might be a PowerPoint document with embedded Excel spreadsheets, for which the spreadsheets would be treated as attachments to the PowerPoint. Non-relevant attachments may be excluded from production. All non-relevant attachments excluded from production should be produced as a slipsheet or placeholder.

10. **Privilege Logs**. Subject to the terms set forth in the Stipulated Protective Order, for documents entirely withheld from production pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity, the designating party shall produce one or more privilege logs in Excel or a similar electronic form that allows text searching and organization of data. Privilege logs will be produced by the date specified in the Docket Control Order or as otherwise agreed to by the Parties. The log will contain the following information for each item not produced for reasons of privilege, to the extent providing this information will not destroy the privilege: (1) the name(s) of the person(s) who created and received the document or a copy of it; (2) the date on which the document was sent and/or last modified; (3) a description of the nature of the document sufficient to enable the receiving party to assess the applicability of the privilege or protection; and (4) privilege(s)

claimed. To the extent reasonably available, legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log. The Parties agree, however, that it is unnecessary to identify in the privilege log communications with outside counsel that are being withheld on the basis of attorney-client privilege. For a chain of privileged emails, the Producing Party need include only one entry on the privilege log for the entire email chain and need not log each email contained in the chain separately.

11. **Database Load Files/Cross-Reference Files**. Documents must be provided with (1) a delimited metadata file (.dat or .txt); and (2) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1.

12. **File Size Limitation/Non-Standard Files**. To the extent necessary or practical, the format of production of unusually large files and non-standard electronic files, large oversized documents will be discussed before production to determine the optimal production format.

13. **Cost-Shifting**. Generally, the costs of production pursuant to this Agreement shall be borne by each producing party. However, the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure. A producing party may seek cost shifting for requests for ESI that is not reasonably accessible due to undue costs or burden. This paragraph is not meant to waive, limit, reduce, or increase the rights and/or obligations of either party.

14. **Inadvertently Disclosed Information**.

In discovery in this lawsuit, the Parties have agreed that they do not intend to disclose information subject to a claim of attorney-client privilege or attorney work product protection. If, nevertheless, a party (the "Disclosing Party") inadvertently discloses such privileged or work

product information ("Inadvertently Disclosed Information") to another party (the "Receiving Party"), such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of attorney-client privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Inadvertently Disclosed Information and its subject matter.

If a Disclosing Party notifies the Receiving Party of Inadvertently Disclosed Information, the Receiving Party shall return or destroy, within 15 business days, all copies of such information and upon written request provide a certification of counsel that all such Inadvertently Disclosed Information has been returned or destroyed. After a Disclosing Party provides written notice of inadvertent production, a Receiving Party shall not copy, distribute, or otherwise use in any manner the disputed documents or information, and shall notify all persons to whom the Receiving Party has disseminated a copy of the documents or information that the documents or information are subject to this Order and may not be copied, distributed, or otherwise used pending further notice from the Court.

**C.     PRODUCTION OF ESI**

**15.     Scope**.  The procedures and protocols set forth in this Agreement shall govern the production of ESI in this matter, unless the parties agree in writing to change them or they are changed by the Court at the request of a party.  To the extent that third parties may produce documents in this case, the Parties agree to request that such third parties to adopt this Agreement.

**16.     Avoidance of Duplicate Production**.  Among responsive files that any party may produce in this action or may list on a required privilege log, the party may take reasonable steps to de-duplicate electronically stored information.

**17.     Metadata Fields and Processing**.  Each of the metadata and index fields set forth in Appendix 2 that can be reasonably extracted from a document will be produced for that

document.  If either of the parties becomes aware of a problem extracting metadata or any other problem with the metadata fields or processing, the party who becomes aware of the problem must notify the other party and meet and confer with the other party to arrive at a mutually acceptable resolution to the issue.  The parties are not obligated to populate manually any of the fields in Appendix 2 if such fields cannot be extracted from a document.

18. **Native File Productions**.  Any native files that are produced must be produced with the applicable metadata fields set forth in Appendix 2.  The parties will produce all Microsoft Excel and any multimedia (audio or video) files as native files, unless redacted.  If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.

19. **TIFFs**.  Single page group IV compression TIFF images will be provided using at least 300 DPI print setting.  Each image must have a unique file name, which is the Bates number of the image.  The producing party will make reasonable efforts to produce these TIFF images consistent with the appearance of the documents as kept in the ordinary course of business.  The TIFF image will include, when feasible and as applicable to the underlying electronically stored information, visible and legible images of comments and hidden text contained within the native document.

20. **Embedded Objects**.  Embedded objects will be extracted as separate documents and treated like attachments to the document.

21. **Compressed Files**. Compressed file types will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

22. **Text Files**. For each document, a single text file will be provided along with the image files and metadata. The text file name will be the same as the Bates number of the first page of the document to which it corresponds. File names must not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or any other native electronic file that does not contain text to extract (e.g. non-searchable PDFs). In these instances, a text file will be created using OCR and will be produced in lieu of extracted text. Except in the case of redacted documents, the receiving party will not be required to rely upon a less accurate version of the text than the producing party.

23. **Structured Data**. In instances in which electronically stored information in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the parties must produce the information in such a report form, in the reasonably usable TIFF-image format described above. If an existing report form is not reasonably available, then the parties will meet and confer to find a mutually agreeable report form.

D. **PRODUCTION OF HARD-COPY INFORMATION**

24. **Hard-Copy Documents**. The parties may produce hard-copy documents either in their hard-copy form or as scanned images. The following sub-paragraphs apply to hard copy documents produced as scanned images. Each hard-copy document must be scanned as black and white, single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI) with corresponding OCR text in document level .TXT format and standard

load files which can be used with commercially available litigation software packages. Each image must have a unique file name, which is the Bates number of the image. To the extent technically available, original document orientation must be maintained (i.e., portrait to portrait and landscape to landscape). The Parties will accommodate reasonable requests for production of specific images in color.

25. **Index Fields**. For each hard-copy document, the following information must be produced and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR) acquired text files are produced. Each index field must be labeled as listed below:

    i.    BegBates,

    ii.    EndBates,

    iii.    BegAttach,

    iv.    EndAttach,

    v.    PageCount

    vi.    Confidentiality, and

    vii.    Custodian Name, to the extent available.

The Parties will meet and confer to discuss whether objective coding information for hard-copy documents should be exchanged.

26. **Unitizing of Documents**. Distinct documents must not be merged into a single record, and single documents will not be split into multiple records (i.e. hard-copy documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the

document behind each tab should be scanned separately. The parties will make their best efforts to unitize documents.

## APPENDIX 1:  FILE FORMATS

**Image Load Files**

Every document referenced in a production image load file must have all corresponding images, text and metadata.

The name of the image load file must mirror the name of the delivery volume and should have a .LFP, .OPT, or .DII extension.

The volume names must be consecutive (e.g. ABC001, ABC002…).  If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.

The load file must contain one line per image.

Every image in the delivery volume must be contained in the image load file.

The image key must be named the same as the Bates number of the image.

Load files must not span across media.

**Metadata Load Files**

The metadata load file must use the following delimiters:

> Column delimiter:  ASCII 020
>
> Text qualifier:  ASCII 254
>
> New line:  ASCII 174

Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.

The first record must contain the field names in the order of the data set forth in Appendix 2.

All data/time fields must be produced in "YYYYMMDD HH:MM AM/PM (GMT)" format.

A carriage-return line-feed must be used to indicate the start of the next document.

Load files must not span across media.

The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.

The volume names must be reasonably consecutive (e.g. ABC001, ABC002…).

## APPENDIX 2: METADATA FIELDS

| | | |
|---|---|---|
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Multiple Choice | Custodian name |
| DATE_CREATION | Date (date:time) | Creation Date File System |
| DATESENT | Date (date:time) | Sent Date for email |
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| HASHVALUE | Fixed-Length Text | MD5Hash (or CONTROL_ID for scanned paper) |
| FILEPATH | Fixed-Length Text | PSIfield: [Relativity_Path] |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| PAGECOUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |

12